**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                       NO. 03-157

ERIC J. MARSHALL                             SECTION "F"

ORDER AND REASONS

Before the Court is the petitioner's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. For the reasons that follow, the motion is DENIED.

Background

On June 27, 2003 the government charged Eric Marshall in a superceding indictment with armed robbery, brandishing a firearm during the robbery, and possession of a firearm by a felon. The case went to trial and the government presented evidence that Marshall and a co-conspirator, Darrell Theodore, entered the Liberty Bank in New Orleans armed with a revolver and an assault rifle, stole approximately $2,200, and attempted to escape in a getaway car driven by a third accomplice, Edward Myles.[1] Several blocks from the bank, dye packs hidden in the stolen cash exploded

---

[1] Theodore pled guilty to bank robbery and using a firearm during a crime of violence; Myles pled guilty to the bank robbery. Both of Marshall's co-defendants were witnesses for the government at his trial.

1

and filled the getaway car with tear gas, forcing the robbers to abandon the car and run away on foot. Myles and Theodore were caught by the police but Marshall managed to escape by hiding in a laundry closet of a nearby apartment complex. The prosecution's case included DNA evidence linking Marshall to a pair of dye-stained black jeans that the FBI found in the laundry closet based on a tip from one of Marshall's accomplices.

On October 26, 2004, a jury convicted Marshall on all counts and the Court sentenced him to 147 months in prison. Marshall appealed his conviction to the Court of Appeals. On appeal, Marshall's appellate counsel, Roma Kent, submitted an _Anders_ brief stating that there were no non-frivolous issues for appeal. Marshall filed a separate submission arguing that he was denied a fair trial by the government's introduction of the DNA evidence from the black jeans, which Marshall claims was unreliable or falsified. On April 18, 2006, the Fifth Circuit dismissed the appeal as frivolous.

All of Marshall's claims in this habeas corpus motion are premised on his theory that there was exculpatory DNA evidence that was never presented to the jury. Marshall claims that his trial counsel, Willard Hill, was ineffective for failing to: (1) investigate the DNA evidence, (2) obtain an exculpatory DNA report, (3) discuss the DNA evidence with Marshall, and (4) object to the admissibility of the government's DNA evidence. Marshall claims

that his appellate attorney, Roma Kent, was ineffective for failing to argue that the government's DNA test was unreliable and for failing to raise a sufficiency of the evidence claim. Finally, Marshall claims that he was denied due process because the government suppressed exculpatory DNA evidence, elicited false testimony from FBI DNA experts, and made improper comments during closing arguments.

## I. Ineffective counsel

The Fifth Circuit has emphasized that "[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Walker, 68 F.3d 931, 934 (5th Cir. 1995) (quoting United States v. Acklen, 47 F.3d 739, 741 (5th Cir. 1995)). Marshall purports to raise issues of constitutional error premised on his claim that he received ineffective assistance of counsel. To prevail on an ineffectiveness claim, Marshall must demonstrate (1) that his counsel's performance was deficient; and (2) that his counsel's deficient performance prejudiced the outcome of his trial. Strickland v. Washington, 466 U.S. 668 (1984). If Marshall fails to establish either deficient performance or actual prejudice, the Court may dispose of the claim without addressing the other prong. Id. at 697.

To establish a deficient performance, Marshall must show that

his counsel's representation "fell below an objective standard of reasonableness." <u>Jones v. Jones</u>, 163 F.3d 285, 301 (5th Cir. 1998) (<u>quoting</u> <u>Strickland</u>, 466 U.S. at 688). The Court applies a highly deferential standard to the examination of counsel's performance, "mak[ing] every effort to eliminate the distorting effects of hindsight" and "evaluat[ing] the conduct from counsel's perspective at the time" of trial. <u>Id</u>. (<u>quoting</u> <u>Pitts v. Anderson</u>, 122 F.3d 275, 279 (5th Cir. 1997)). The second prong of <u>Strickland</u>, addressing prejudice, requires the petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>. at 694. The standards for ineffective trial counsel and ineffective appellate counsel are the same. <u>United States v. Merida</u>, 985 F.2d 198, 202 (5th Cir. 1993).

A.

Marshall's claim that his trial counsel failed to investigate the DNA evidence is patently frivolous and without merit. Before trial, Mr. Hill filed a number of motions related to obtaining DNA evidence from the government, obtaining a DNA sample from the defendant, and receiving funding under the CJA to hire an independent DNA expert to test the black jeans. All of these motions were granted. The forensic report prepared by the defendant's expert at DNA Diagnostics Center in Fairfield, Ohio

4

confirmed the FBI's conclusion: Marshall was the major contributor of DNA on the black jeans.[2] Hill discussed these findings with Marshall on September 22, 2004, when, according to Hill's application for payment under the Criminal Justice Act, he "[s]howed [Marshall] the final report from the independent DNA Lab we contracted for our own exam. Explained the results and their significance. Also explained the consequences of going to trial without a rational or viable defense." Marshall's claim that his attorney failed to investigate the DNA evidence is simply false, and his theory that there exists some other exculpatory DNA report has been rejected in prior proceedings before this Court. See March 28, 2007 Order Adopting the Magistrate's Report and Recommendation.[3]

_____

[2] The forensic report from the DNA Diagnostic Center, which was prepared by Julie A. Heinig, Ph.D., and Michael L. Baird, Ph.D., on May 12, 2004, is in the record at docket number 131-3.

[3] In considering Marshall's previous discovery motions, Magistrate Judge Moore noted that, apart from the July 23, 2003 FBI lab report prepared by Heather Seubert, and the May 12, 2004 independent DNA report by DNA Diagnostics Center, there were no DNA reports under seal, in the possession of defense attorneys, or in the possession of the government. According to Marshall, Sam Skettino, a DNA Diagnostics employee who Marshall refers to as the "defense DNA expert," allegedly told him that his DNA report was exculpatory to the defense. But Skettino was merely the payee who signed the CJA voucher, and not the forensic analyst who conducted Marshall's DNA testing. Marshall's request for additional discovery based on the alleged statement by Mr. Skettino is unfounded.

B.

Marshall also claims that Hill was ineffective for failing to challenge the admissibility of the government's DNA evidence in a Daubert hearing. During the trial, the government called two expert witnesses: Heather Seubert, a DNA analyst from the FBI who testified that Marshall's DNA was found on the black jeans, and Robert Rooney, an FBI chemist who testified that traces of red dye from Liberty Bank's dye-packs were found on the black jeans. At the close of evidence, Hill objected that he "[did] not believe that these tests are reliable." The Court overruled the objection, because Hill had not impeached the credibility of the witnesses and "offered absolutely nothing to suggest. . . that there is anything unreliable about the tests of the FBI lab in the chemistry area."

Once again, the thrust of Marshall's claim is that an effective lawyer would have relied on the exculpatory DNA evidence to impeach the reliability of the FBI's laboratory results. But there was no exculpatory DNA evidence. Nor was Mr. Hill constitutionally ineffective for failing to attack the underlying science of DNA evidence in a pre-trial motion in limine.[4] Rather

---

[4] Numerous Courts of Appeal have upheld the admissibility of DNA evidence under the standards of Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). See, e.g., United States v. Martinez, 3 F.3d 1191 (8th Cir. 1993); United States v. Bonds, 12 F3d 540 (6th Cir. 1993); United States v. Hicks, 103 F.3d 837 (9th Cir. 1996), cert. denied, 117 S. Ct. 1483 (1997); United States v. Davis, 40 F.3d 1069 (10th Cir. 1994).

than doing so, Hill moved for CJA funds to conduct an independent DNA test. This was a reasonable strategic decision and certainly does not amount to denial of Sixth Amendment right to counsel.[5]

C.

In her <u>Anders</u> brief, Ms. Kent addressed the issue of the sufficiency of the evidence and recognized that such an argument could not satisfy the standard of manifest miscarriage of justice. <u>See</u> <u>United States v. Burton</u>, 324 F.3d 768, 770 (5th Cir. 2003). Marshall claims that this concession rose to the level of denial of right to counsel. A claim of insufficiency of the evidence is not cognizable on a collateral motion under § 2255. <u>Forrester v. United States</u>, 456 F.2d 905, 907 (5th Cir. 1972). Even if it were, Marshall fails to explain how the evidence presented at trial was insufficient, and general statements and conclusory charges of insufficiency will not suffice. <u>See</u> <u>Green v. McGougan</u>, 744 F.2d 1189, 1190 (5th Cir. 1984). In fact, the government presented evidence of Marshall's DNA on the dye-stained jeans, two of Marshall's co-conspirators identified him as the bank robber, and

_____

[5] The Court notes that, on appeal, Marshall argued that he was denied a fair trial by the government's presentation of unreliable scientific evidence. The essence of this claim was that his trial attorney should have moved for a <u>Daubert</u> hearing on the admissibility of the government's DNA evidence. The Fifth Circuit considered this claim ("[o]ur independent review of the brief, Marshall's response, and the record...."), and dismissed the appeal. To the extent that the issue of Hill's failure to move for a <u>Daubert</u> hearing was considered and disposed of on direct appeal, it cannot be reconsidered in a § 2255 motion. <u>See</u> <u>United States v. Kalish</u>, 780 F.2d 506, 508 (5th Cir. 1986).

a third witness testified about admissions Marshall made in jail. Ms. Kent's decision not to raise a sufficiency of the evidence argument was neither objectively deficient nor prejudicial to Marshall's defense.[6]

## II. Due process violations

### A.

Marshall contends that the government violated his due process rights both by intentionally withholding exculpatory DNA evidence, see Brady v. Maryland, 373 U.S. 83, 83 (1963), and by eliciting false testimony from FBI expert witnesses regarding DNA test results in violation of Giglio v. United States, 405 U.S. 150, 153 (1972).

The Brady disclosure rule applies both to direct exculpatory evidence and to evidence impeaching government witnesses. United States v. Bagley, 473 U.S. 667, 676 (1985). In order to establish a Brady violation, the defendant must prove that: (1) the prosecution failed to disclose evidence, (2) which was favorable to him, and (3) which was material to the defense. United States v.

---

[6] There is also no merit to Marshall's contention that Ms. Kent's failure to follow up on trial counsel's attempt to exclude the government's DNA evidence amounted to a Sixth Amendment violation. Indeed, this claim is based on the discredited theory that Ms. Kent possessed (or should have possessed) an exculpatory DNA report that, in reality, does not exist. In any case, the essence of Marshall's submission to the Fifth Circuit on direct appeal was that his trial counsel's failure to challenge the reliability of the government's forensic tests denied him a fair trial. The Fifth Circuit considered and rejected this claim.

<u>Lanford</u>, 838 F.2d 1351, 1355 (5th Cir. 1988). Marshall has not proven any of these elements, much less all of them. The government's DNA evidence established that Marshall was the major contributor of the DNA found on the dye-stained jeans, and this is precisely the kind of inculpatory evidence that is *not* covered by <u>Brady</u>. Marshall's suggestion that the government suppressed an exculpatory independent DNA report finds absolutely no support on the record.

In <u>Giglio</u>, the Supreme Court held that a new trial is required if the government presents false testimony, if the false testimony "could in any reasonable likelihood have affected the judgment of the jury." <u>Giglio</u>, 405 U.S. at 154. In order to prevail on a claim under <u>Giglio</u>, Marshall must demonstrate that "(1) the evidence was false, (2) the evidence was material, and (3) the prosecution knew that the evidence was false." <u>Nobles v. Johnson</u>, 127 F.3d 409, 415 (5th Cir. 1997). Marshall claims that the government knowingly allowed FBI expert Heather Seubert to present testimony about erroneous FBI DNA tests. Marshall claims he was told by a DNA Diagnostics employee Sam Skettino that Seubert's DNA report (and her testimony on this subject) "had to be incorrect or improperly established because her reports had entirely no consistency with the reliability and accuracy of [the independent] DNA reports." On the contrary, any question about the reliability of the FBI's DNA test is soundly answered by the fact that the independent DNA test

by DNA Diagnostics reached the same conclusion: Both tests identified Marshall as the major contributor of DNA on the black jeans. Once again, however, Marshall relies on the baseless claim that there was an exculpatory DNA report which the government had "sealed by the court and proceeded to prosecute [Marshall] with the misleading evidence and testimony." But the Magistrate Judge has already concluded that no DNA reports have been placed under seal. The testimony by the government's DNA witnesses was relevant and probative to the question of Marshall's identity, and there is no support for Marshall's claim that the testimony was false.

B.

Finally, Marshall argues that the Assistant United States Attorney made a "generic due process violation" during closing argument by referring to the testimony of Heather Seubert and urging the jury to consider the DNA evidence that, according to Marshall, the government knew was erroneous or unreliable. As discussed above, there is no basis for this claim.

Accordingly, IT IS ORDERED that Eric Marshall's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 is DENIED, and Marshall's request for discovery is DENIED.

New Orleans, Louisiana, July 29, 2008.

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

10